# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF INDIANA – HAMMOND DIVISION

| | | |
|---|---|---|
| DAVID RILEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| CURRIE MOTORS FORD OF VALPO, | ) | |
| CURRIE MOTORS, INC., | ) | |
| and LEO SFIKAS, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, David Riley, by and through his attorneys, PFEIFER MORGAN & STESIAK, for his complaint against Defendants Currie Motors Ford of Valpo, Currie Motors Inc., and Leo Sfikas states as follows:

### Introduction

1.    Currie Motors Ford of Valpo ("Currie Ford") is one of the most successful Ford dealerships in Northern Indiana and the entire Midwest region. However, beneath its success and sterling reputation, Currie Ford employees endure an environment of systemic sexual harassment and rampant abuse under General Manager Leo Sfikas.

2.    As a Currie Ford employee, David Riley was repeatedly abused by Sfikas and other Currie Ford managers who dominated and degraded their subordinates using hazing and threats of sexual violence.

3.    After one workplace incident, Sfikas declared the penalty of "Death by BUGANDA," against David Riley on a text message thread involving several management level employees. BUGANDA was an invented phrase that was understood to mean death by anal rape.

1

Following this declaration, Sfikas and the other managers at Currie Ford dog-piled David Riley with graphic descriptions of how they would brutally rape him to atone for his mistake.

4. Despite a thin veneer of "humor," Sfikas reinforced the gravity of the threats, stating "BUGANDA IS REAL RILEY" and "You will wish this was a mental mind fuck when you smell the smoke." This was consistent with other threats and intimidation such as when he texted David a picture of his "throw away" gun and when he menacingly told him that he "knew people" from Chicago who could hurt anyone who crossed him. On another occasion, Sfikas sexually assaulted David Riley at work, groping his buttocks and genitals under the pretext of "searching for drugs." In yet another conversation shortly before David's termination, Sfikas threatened, "I'm probably gonna put my hands on you. Okay? I'm willing to go to jail and I'm willing to get sued."

5. Defendant Sfikas' troubling managerial tactics were well known to Currie Ford. Before managing the Valparaiso dealership, Sfikas had previously been removed and reassigned from a different Currie dealership location based on similar allegations. However, because Sfikas' abusive workplace culture has proven to be immensely profitable to the company, Currie Ford has chosen to look the other way. Despite knowing of the outrageous conduct suffered by David Riley, Currie Ford management has failed to take any meaningful steps to prevent the harassment from occurring.

**Jurisdiction and Venue**

6. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## Parties

8. Plaintiff David Riley is a resident of Porter County, Indiana.

9. Defendant Currie Motors Ford of Valpo is an Indiana for-profit corporation with its principal place of business at 2052 Morthland Dr., Valparaiso, IN, 46385.

10. Defendant Currie Motors, Inc., the parent company and owner of Defendant Currie Motors Ford of Valpo, is an Illinois for-profit corporation with its principal place of business at 8401 W. Roosevelt Rd., Forest Park, IL 60130.

11. Defendant Leo Sfikas is an employee of Currie Motors Inc., and the General Manager of Currie Motors Ford of Valpo and is a resident of Cook County, Illinois. At all times relevant to the events at issue in this case, Defendant Sfikas was acting within the scope of his employment.

## Allegations

12. In April 2017, David Riley was hired by Currie Ford as a service advisor at the dealership location in Valparaiso, Indiana. Within months, David received a series of promotions through the sales department and ultimately becoming the aftermarket or accessories manager at Currie Ford.

13. In addition to his standard job responsibilities, David also became the go-to person for large projects or tricky "odd job" tasks that fell outside of his job responsibilities. Because of his industry and effort, David quickly ascended the company ranks at Currie Ford.

14. At all relevant times to this complaint, Defendant Leo Sfikas was an employee of Currie Ford and was the General Manager of the Currie Ford dealership in Valparaiso as well as two other locations in Illinois.

15. Sfikas had a troubled history with the company that included him being voted out of a previous Currie dealership in Cook County, Illinois based upon the abusive and hostile work environment which was fostered under his leadership.

16. Despite his checkered history, Leo Sfikas' abusive management style was immensely profitable to Currie Ford. Thus, rather than being fired or disciplined, Currie Ford simply reassigned Sfikas to different dealerships within the company, including Currie Motors Ford of Valpo.

17. Following that reassignment, Currie Ford's deliberate indifference paid off handsomely as the Valparaiso dealership became one of the most profitable Ford dealerships in Northern Indiana and the entire Midwest United States. All the while, Sfikas' abusive management tactics continued unabated with the tacit approval of company leaders.

18. Moreover, Currie Ford instituted a rigid chain-of-command hierarchy whereby employees were largely prohibited from reporting any abuses to other corporate personnel above Leo Sfikas and the other supervisors of Currie Ford. The contact information of corporate staff was withheld from lower level employees, and employees' contacts with the corporate office were closely monitored and harshly sanctioned if the chain of command was not honored.

19. Because all reporting flowed through him, Leo Sfikas acted with impunity, and his well-known penchant for abuse was a harsh reality for employees of Currie Ford.

20. Despite Sfikas' abusive tactics, David Riley's earnest approach earned him a series of rapid promotions and favorable recognition from Currie Ford managers. However, as his responsibilities grew, so too did the severity of harassment that he experienced from Sfikas.

21. By early 2020, the harassment had intensified to a point where even small mistakes were disciplined with searing vitriol. In January a dispute arose over the condition of a

used car that was scheduled for work at the dealership. After David notified him of the issue, Sfikas lashed out at him:



22.     In person, things were no better as Sfikas would often go out of his way to belittle and demean David. On one occasion, Sfikas cornered David in a back area of the dealership and performed a pat-down search to "look for drugs." During the "search," Sfikas physically assaulted David by groping his genitals and buttocks. Only when another employee came upon the scene was David released and permitted to go back to his responsibilities.

23.     This sort of physical domination and abuse was part and parcel of Leo Sfikas' treatment of Currie Ford employees. As the general manager, Sfikas was responsible for the implementation and enforcement of anti-harassment policies. However, Sfikas instead used that power to carry out further abuse and harassment of his male employees.

24. On one occasion, after a female cashier made a complaint about sexual harassment, Sfikas called a meeting with his male employees in a small, cramped office. Without saying a word, Sfikas pulled down his pants and exposed his buttocks to the group. Then, he walked over to the offending employee, grabbed him by the genitals and said "How do you like it, motherfucker?" After that he began shoving other employees who were also involved in the incident.

25. Despite being in a room full of managers and supervisors, no one intervened to put a stop to this inappropriate behavior because Sfikas was universally feared by the employees at Currie Ford. Sfikas intentionally cultivated this fear. In one text message, Sfikas texted David a picture of his "throw away" gun – an image of a handgun with no discernible serial number. On another occasion, Sfikas menacingly described how he "knew people" from Chicago, suggesting that he could engage those folks to do harm to anyone who crossed him.

26. The centerpiece of Sfikas' regime of intimidation and harassment revolved around the punishment of "Buganda." At Currie Ford, "Buganda" is widely understood as an invented term for death by anal rape. In meetings and in group messages, Buganda was proposed as the ultimate punishment for the male staff at Currie Ford. Buganda was not used as a disciplinary threat against female employees at Currie Ford.

27. As Sfikas' treatment of David worsened, the punishment of Buganda was increasingly invoked to humiliate and degrade David in the eyes of his coworkers.

28. In August 2020, following a relatively benign mix-up where a customer mistakenly believed that David had promised her free car washes, Sfikas publicly declared "Death by BUGANDA" against David. The text message thread, which featured several

managers and supervisors at Currie Ford, quickly devolved into a stream of graphic messages detailing how David would be raped by his coworkers:





7

29. Amid these messages, David tried to defend his actions with the customer. But his responses were ignored and the onslaught continued:



30. After pleading his case, David also tried to assuage his coworkers' animosity by pretending to play along stating that he was "preparing mentally" for his impending punishment. Sfikas immediately snapped back: "You will wish this was a mental mind fuck when you smell the smoke."

31. All the while, David's co-workers continued to pepper the thread with rape-related internet memes and gifs including images from the movie *Deliverance*. The harassment carried into the next work week with David's co-workers making sexual comments at him throughout the workday. David's only reprieve from the harassment was to avoid his coworkers altogether.

32. Following this incident, Sfikas continued to mistreat David. In October 2020, following an incident involving a misplaced customer credit card, Sfikas launched yet another

tirade against David in which he concluded: "Fact is you kept telling [Sales Manager Adam Hernandez] that you had control of the customer but you did not. Your bullshit spin didn't work. Now it's BUGANDA TIME. Stick to your bullshit story and see how well it works for you."

33. Just days later, Sfikas again attacked David without justification. During a phone call, Sfikas threatened that "I'm probably gonna put my hands on you. Okay. I'm willing to go to jail and I'm willing to get sued." In a related text message thread with Sfikas and another Currie Ford supervisor, David defended his work ethic and called out Sfikas' abuse. Sfikas responded "FUCK YOU[.] Your disrespect for my wishes it's fucking despicable. … Stop turning the tables around. Permission granted quit or I will fire you."

34. Because of Leo Sfikas' relentless sexual and psychological harassment David Riley has experienced pain, suffering and emotional distress. David was unlawfully and unjustifiably forced out of his successful career at Currie Ford of Valpo. As a result, David faces great financial uncertainty from lost wages and diminished earning capacity.

35. Despite the widespread knowledge and awareness of Sfikas' abuse and harassment, Currie Ford failed to take any reasonable steps to prevent that abuse from happening. By failing to act, Currie Ford effectively ratified Sfikas' misconduct such that it became the official policy of Currie Ford.

36. Following his complaints and the announcement of his resignation, David Riley was temporarily retained on the payroll while Currie Ford conducted an internal investigation of the matter. However, after a short period, before the outcome of the investigation was revealed, Currie Ford terminated David Riley.

## COUNT I
## Title VII – Sexual Harassment
## All Defendants

37. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

38. As described more fully above, Defendant Leo Sfikas and other managerial staff of Currie Ford, were David Riley's supervisors and had the ability to affect the conditions of David Riley's employment at Currie Ford.

39. Directly and indirectly under their supervision, David Riley suffered sexual harassment in the form of verbal threats and physical assault.

40. This abuse and harassment was unwelcome and was done willfully or with reckless disregard of David Riley's rights.

41. This abuse and harassment occurred because David Riley is a male and the official pattern and practice at Currie Ford sanctioned the sexual harassment and degradation of male employees. Furthermore, without such pattern and practice of discrimination against men, the sexual harassment and abuse would not have occurred.

42. The above described harassment was sufficiently severe or pervasive that a reasonable person in David Riley's position would find his work environment to be hostile or abusive. At the time the harassment occurred, David Riley believed that the conduct made his work environment hostile and abusive.

43. Defendant Leo Sfikas and the managers of Currie Ford knew or should have known about the conduct and did not take reasonable steps to prevent the harassment from occurring.

44. David Riley suffered adverse employment actions from Defendants in that he was terminated and/or constructively discharged because Defendants' conduct made his working conditions so intolerable that a reasonable person in his position would have had to quit.

45. As a result of Defendants' unlawful and unjustified conduct, David Riley has experienced pain, suffering, emotional distress, lost income and diminished future earning capacity.

## COUNT II
### Title VII – Retaliation
### All Defendants

46. Plaintiff incorporates all paragraphs of this complaint as if fully set forth herein.

47. David Riley engaged in protected activity when he notified Currie Ford of his complaints and announced his intent to resign if those issues were not adequately addressed.

48. After learning of David Riley's complaints, Currie Ford temporarily retained David Riley on the payroll in order to investigate the matter. Before the investigation was completed, Currie Ford swiftly reversed itself and terminated David Riley.

49. Defendants terminated David Riley because he engaged in protected activity when he complained to Defendants about the systemic sexual harassment he endured.

50. Defendants would not have terminated David Riley if he had not engaged in protected activity.

51. As a result of Defendants' unlawful and unjustified conduct, David Riley has experienced pain, suffering, emotional distress, lost income and diminished future earning capacity.

## COUNT III
### Indiana State Law – Sexual Battery
### All Defendants

11

52. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

53. Defendant Leo Sfikas used physical force against David Riley when he sexually assaulted him and groped his buttocks and genitals. This physical force was a harmful and offensive contact and was done without the consent of David Riley.

54. The physical force used against David Riley was unreasonable, unnecessary and unjustified by the totality of the circumstances.

55. The use of physical force was done in an intentional, willful and wanton manner, with a reckless disregard for the safety of David Riley.

56. As a result of the battery committed by Defendant Leo Sfikas, David Riley experienced pain, suffering and emotional distress.

57. At all times relevant to this lawsuit, Defendant Leo Sfikas acted within the scope of his employment with Currie Ford who is liable under the theory of *respondeat superior*.

## COUNT IV
### Indiana State Law – Intentional Infliction of Emotional Distress
### All Defendants

58. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

59. As alleged above, Defendant Sfikas' conduct was extreme, outrageous, beyond all possible bounds of decency, and is conduct that is regarded as atrocious and utterly intolerable in a civilized community.

60. This conduct was done with an intent to cause emotional distress and/or with a knowledge that emotional distress was substantially certain to occur.

61. As a result of Defendant Leo Sfikas' conduct, David suffered emotional distress and damages of a personal and pecuniary nature.

62. At all times relevant to this lawsuit, Defendant Sfikas acted within the scope of his employment with Currie Ford who is liable under the theory of *respondeat superior*.

## COUNT V
### Indiana State Law – Negligent Infliction of Emotional Distress
### All Defendants

63. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

64. As alleged above, Defendant Leo Sfikas' conduct was extreme, outrageous, beyond all possible bounds of decency, and is conduct that is regarded as atrocious and utterly intolerable in a civilized community. In other words, Defendants failed to conform their conduct to that of a reasonable person.

65. This conduct was done with an intent to cause emotional distress and/or with a knowledge that emotional distress was substantially certain to occur.

66. As a result of Defendant Sfikas' conduct, plaintiff suffered emotional distress and damages of a personal and pecuniary nature.

67. At all times relevant to this lawsuit, the individual Defendant Sfikas acted within the scope of his employment with Currie Ford who is liable under the theory of *respondeat superior*.

## COUNT VI
### Indiana State Law – Retaliatory Discharge
### All Defendants

68. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

69. David Riley engaged in protected activity when he notified Currie Ford of his complaints and announced his intent to resign if those issues were not adequately addressed.

70. After learning of David Riley's complaints, Currie Ford temporarily retained David Riley on the payroll in order to investigate the matter. Before the investigation was completed, Currie Ford swiftly reversed itself and terminated David Riley.

71. Defendants terminated David Riley because he engaged in protected activity when he complained to Defendants about the systemic sexual harassment he endured.

72. Defendants would not have terminated David Riley if he had not engaged in protected activity.

73. As a result of Defendants' unlawful and unjustified conduct, David Riley has experienced pain, suffering, emotional distress, lost income and diminished future earning capacity.

WHEREFORE, Plaintiff David Riley, requests that this Court enter a judgment in his favor and against Defendants Currie Motors Ford of Valpo, Currie Motors, Inc., and Leo Sfikas, awarding compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

### Jury Demand

Plaintiff David Riley, hereby demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.

Dated: March 1, 2021                    Respectfully submitted,

/s/ Daniel H. Pfeifer
Daniel H. Pfeifer (5720-71)
Peter D. Hamann (34615-45)
Attorneys for Plaintiff
PFEIFER, MORGAN & STESIAK
53600 North Ironwood Drive
South Bend, Indiana 46635
Telephone: (574) 272-2870